## HOWELL v. KNOX.

### No. 9675.

Court of Civil Appeals of Texas. Austin.

March 3, 1948.

Rehearing Denied March 24, 1948.

Looney & Clark and R. Dean Moorhead, all of Austin, for appellant.

Critz, Kuykendall, Bauknight & Stevenson, of Austin, for appellee.

RAYMOND GRAY, Justice.

Will G. Knox as receiver of the Texas Fire and Casualty Underwriters, a reciprocal insurance exchange organized under the provisions of Chap. 20, Title 78, Revised Civil Statutes of Texas, Vernon's Ann.Civ. St. art. 5024 et seq., brought this suit, as a class action, against H. H. Howell and 29 named defendants, individually and as representatives of 4,298 unnamed defendants, and alleged all defendants were subscribers of said Texas Fire and Casualty Underwriters. The suit was for the purpose of obtaining a levy of an assessment against the subscribers under the provisions of Art. 5026(4), Revised Civil Statutes, Vernon's Ann.Civ.St. art. 5026, subd. 4.

At the trial some six defendants intervened but did not participate; three filed pleas of privilege and were dismissed as named but not as unnamed defendants; twenty-one named defendants defaulted; one named defendant was in the military

service; two were not served; and two were deceased; of these last five the first three were dismissed as named but not as unnamed defendants, the two deceased defendants were dismissed as named defendants, but their heirs and legal representatives were held as unnamed defendants. The defendant Howell appeared and defended the suit individually and as a representative of the 4,298 unnamed defendants. The trial was to a jury and upon the conclusion of the evidence, upon the motion of the plaintiff, the court withdrew the case from the jury and rendered judgment for the receiver against the 4,298 defendants, authorizing the assessment of an amount of money equal to one additional annual premium or premium deposit booked and earned on each policy held by each subscriber of Texas Fire and Casualty Underwriters during any portion of the period of time from December 31, 1939, to October 25, 1941, and adjudged the cost against the plaintiff, Knox.

H. H. Howell, individually and in his representative capacity, has appealed. The defendants in the trial court will be here referred to as appellant, plaintiff receiver as appellee, and the Texas Fire and Casualty Underwriters as Underwriters.

Appellant presents eighteen points of alleged errors. The first four of these are: There was no evidence, or there was insufficient evidence, to show appellants were subscribers at the Underwriters. The petition alleges the Underwriters to be a reciprocal insurance exchange, organized under Chap. 20 of Title 78, R.C.S. Art. 5025 of this Chapter provides for the execution of contracts by an attorney in fact; Art. 5026 provides:

"Such subscribers, so contracting among themselves, shall, through their attorney in fact, file with the Board of Insurance Commissioners, a declaration verified by the oath of such attorney in fact setting forth: * * *

"Such power of attorney or other authority executed by the subscribers at any such exchange shall provide that such subscribers shall be liable, in addition to the premium or premium deposit specified in the policy contract, to a contingent liability equal in amount to one additional annual premium or premium deposit * * *."

The subscribers' agreement filed with the Board of Insurance Commissioners and in evidence in this cause, contains a provision, as follows:

"5. Our Attorney-in-Fact shall pay out of our funds all expenses including our proportion of the cost of securing, issuing and exchanging insurance and all costs of reinsurance and all claims or demands as adjusted, contested, compromised, or reduced to judgment, but our liability for the payment of expenses, claims and reserves as set out above, shall not exceed one additional annual premium or deposit premium. In consideration for its service, our Attorney-in-Fact shall deduct for itself not to exceed ten per cent (10%) of all moneys received or due as a result of this Agreement. We agree to pay promptly at the offices of our Attorney-in-Fact in the city where it is located all demands of our Attorney-in-Fact for moneys to be used for the purposes set forth in this agreement. Failure to pay promptly such demands shall be cause for legal enforcement of same and our Attorney-in-Fact is specifically authorized to bring such proceedings in the name of the Texas Fire & Casualty Underwriters, or in its own name as Attorney-in-Fact, for Subscribers at Texas Fire & Casualty Underwriters."

" * * * The reciprocal or inter-insurance exchange is a creature of the statutes (Arts. 5024–5033a, R.C.S., Vernon's Ann. Civ.St. arts. 5024–5033a) and its powers, duties, responsibilities and methods of operation are regulated by statute Its contracts are therefore referable to the provisions of such statutes, and it is now well settled law that the requirements of such statutes are read into and become a part of such insurance contracts. It is also now settled that policy holders in such reciprocal exchange are both insurer and insured, and not only as contemplated by the statutes, but under the provisions of the policies issued, the insurance contract consists of the 'subscribers agreement,' or 'power of attorney,' and the policy issued, and that the

two are inseparably interrelated." Mercer v. Knox, Tex.Civ.App., 193 S.W.2d 885, 886.

■ The forms of policies used by the Underwriters were admitted in evidence, and stipulation was made by the attorneys that the same were the forms so used. In plaintiff's petition demand was made of the defendants to produce the policies of insurance issued to them by the Underwriters, with notice that upon failure to so produce said policies secondary evidence would be offered to show the terms and conditions thereof. The policies were not produced, but at the trial Miss Frances McMillan testified she worked as a bookkeeper for the Underwriters from 1938 to 1941; that she recalled a number of the large policyholders, and H. H. Howell was one of these; she recalled having seen policies issued to him and had gotten checks from him; she was not familiar with H. H. Howell's signature, and her evidence does not suggest she personally knew H. H. Howell. The following from Kelly v. Consolidated Underwriters, Tex.Civ.App., 300 S.W. 981, 984, affirmed on other grounds, Tex.Com. App., 15 S.W.2d 229, is ascribed therein to Robertson v. DuBose, 76 Tex. 1, 13 S.W. 300: "Similarity of name is held to be sufficient to establish the identity of the person, when there is no evidence to the contrary, and no suspicion cast upon the transaction by the evidence."

■ H. H. Howell, who defended the suit individually and as a representative of a class, did not testify. We hold the evidence sufficient to show him to be a subscriber.

Howell did file a verified answer containing a denial that he had executed the subscribers' agreement, and further: "* * * that if any reciprocal or inter-insurance contract or agreement such as was alleged in plaintiff's original petition was entered into for him by any agent of the Texas Fire and Casualty Underwriters, or by any other person, such action was taken without his knowledge or consent, and he has not since ratified or confirmed the same."

■ This pleading does not change what we have said. "In order to put in issue the execution by it or by its authority of an instrument 'upon which a pleading is founded,' the defendant is required to deny such execution or authority under oath. This means a specific, categorical denial, usually referred to as a plea of non est factum. A general denial is not such plea." Century Ins. Co., Ltd. v. Hogan, Tex.Civ.App., 135 S.W2d 224, 228.

■ It is to be noticed in the above denials the defendant denied only that he had executed the subscribers' agreement, and that he had not authorized any person to execute for him any reciprocal or inter-insurance contract; that if any such agreement or contract was entered into for him it was without his knowledge and consent, and he has not since ratified or confirmed the same. These denials amount to no more than denials of the provisions of the law.

"The subscribers are both insurers and insured and the rights and liabilities of such subscribers are fixed and determined by their applications, the policies issued and the governing laws, all of which enter into and become parts of their contracts." Glenn H. McCarthy, Inc. v. Southern Underwriters, Tex.Civ.App., 192 S.W.2d 469, 471, Error Refused NRE.; Mercer v. Knox, supra.

■ The books and records of the Underwriters were made available to the defendants. There was introduced in evidence carbon copies of letters sent to the subscribers, and carbon copies of letters sent to the named defendants. Also, a copy of a mineographed letter sent to all subscribers, which advised these parties the records of the Underwriters showed such parties to be subscribers. There were 256 replies to this letter. This evidence in its entirety, being both direct and circumstantial, is sufficient to show the defendants were subscribers. The relief prayed for is the levy of an assessment of liability against the subscribers, the judgment is a class judgment which does not name the members of the class and does not determine the amount of liability against any member of such class. These are issues to be determined at such time as the Receiver may seek to enforce the individual liability of the subscribers.

Appellant's points 1, 2, 3 and 4 are overruled.

By points 5 and 6 appellant presents there was not sufficient evidence to show insolvency of the Underwriters; by points 7, 8 and 9 there was an issue of fact as to the solvency of said Underwriters, and therefore the trial court erred in withdrawing the case from the jury; and by point 10 presents the trial court erred in levying the assessment.

■ The meaning of the terms "insolvent" and "insolvency" is not definitely fixed and such terms are not always used in the same sense, but their definition depends rather on the business or fact situation to which the terms are applied. 24 Tex.Jur. "Insolvency", p. 433.

As to the Underwriters the financial requirements provided by law are to be found in Art. 5029, R.C.S., Vernon's Ann.Civ. St. art. 5029. We quote this Article:

"There shall be maintained at all times such reserves as are required, or which, by the laws of this State or by the lawful rules and regulations of the Board of Insurance Commissioners, hereafter may be required, to be maintained by stock insurance companies transacting the same kind or kinds of insurance business.

"There shall be maintained at all times assets in a sum sufficient to discharge all liabilities, including reserves, and to provide a surplus over all liabilities, including reserves, of not less than Fifty Thousand Dollars ($50,000), and if at any time such surplus shall not equal that amount the attorney may make up such deficiency in the manner provided by Article 5029a of this Chapter.

"The required assets of such exchanges shall be maintained in cash or securities of the kind in which general casualty companies are authorized by law to invest or lend their funds. Any exchange whose attorney in fact now has a certificate of authority to transact business in this State shall have until December 31, 1941, to fulfill the foregoing financial requirements specified in this Article; provided, however, that, upon good cause shown, the Board of Insurance Commissioners may, in the exercise of reasonable discretion, extend such period of time for not to exceed three (3) years thereafter; provided further, however, that any exchange requiring such additional time to fulfill such financial requirements shall not have, at any time after the passage of this Act, a surplus less than its said surplus as the same existed on January 1st, 1939.

"If fidelity and surety bond insurance is exchanged in this State by any reciprocal exchange, there shall be kept on deposit with the State Treasurer of Texas, money, bonds, or other securities, in an amount not less than Fifty Thousand Dollars ($50,000). Such securities shall be approved by the Board of Insurance Commissioners, and this amount shall be kept intact at all times. Any foreign exchange writing fidelity and surety bonds in this State shall file with the Board of Insurance Commissioners evidence, satisfactory to the Board of Insurance Commissioners, that it has on deposit with the State Treasurer or other proper officials of its home State or in escrow under his supervision and control in some reliable bank or trust company One Hundred Thousand Dollars ($100,000) or more, in money, bonds or other securities for the protection of its policyholders; provided, further, that if said bonds and securities herein referred to are not acceptable to and approved by the Board of Insurance Commissioners of Texas, said Board shall have the right and authority to deny the attorney in fact a certificate of authority. Acts 1915, p. 269; Acts 1939, 46th Leg., p. 417, § 4."

■ An examination of the balance sheet prepared by the Insurance Examiner as of June 30, 1940, which was offered in evidence by appellant and which we hold to be admissible, shows the liabilities to exceed the assets of the Underwriters. The balance sheet prepared by the said Insurance Examiner as of December 31, 1938, also offered in evidence by appellant, shows "surpluses as regards policyholders, $33817.-58"; and also shows the assets exceed the liabilities by only a small margin. This surplus is not equal to that provided for in Art. 5029, supra, and even if taken as the surplus existing on January 1, 1939, the balance sheet as of June 30, 1940, does not

show a surplus amounting to that figure. These sheets show a failure to maintain the financial requirements as provided by Art. 5029, supra, and which Article determines the issue of insolvency of the Underwriters. The three balance sheets prepared by the witness Herring being: as of December 31, 1939, as of December 31, 1940, and as of October 25, 1941, each shows the liabilities to exceed the assets of the Underwriters. It is true the balance sheets of the Insurance Examiner and the witness Herring are in conflict as to the amounts of deficits, but in no event can the balance sheets be interpreted to show the Underwriters maintained at all time assets in "a sum sufficient to discharge all liabilities, including reserves, and to provide a surplus over all liabilities, including reserves, of not less than Fifty Thousand Dollars ($50,000)," as is provided by Art. 5029, supra. This fact with the further showing that the assets of the Underwriters do not equal the liabilities shows a failure to keep its financial condition up to the requirements of law, and therefore renders the Underwriters insolvent under the test here applied. Article 5030, R.C.S.

■ The record as here presented is amply sufficient to show the Underwriters insolvent within the meaning of that term; for which reason we hold no fact issue of insolvency was presented, and the trial court's action in withdrawing the case from the jury was not error.

The insolvency of the Underwriters having been established, the liability of the subscribers for assessments, during the period of such insolvency, follows as a matter of law under the terms of the subscribers' agreement.

Appellant's points 5, 6, 7, 8, 9 and 10 are overruled.

■ By point 11 appellant presents Mr. Floyd Herring was an interested witness and the trial court was not authorized to determine the insolvency of the Underwriters and render judgment for the receiver solely on his testimony. Mr. Herring was a deputy liquidator and would draw a portion of his salary from the receivership fund of said Underwriters. He testified to his many years of experience as an ac-

countant and auditor. The records of said Underwriters are shown and admitted to be voluminous. Even though the weight to be given to his testimony was a matter for the triers of the facts, under the record before us, the trial court would not have been authorized to disregard Mr. Herring's testimony on the ground of his interest.

. ■ By points 12, 13, 14 and 15 appellant assigns error to the action of the trial court in refusing to admit in evidence one examiner's report for the period of time ending December 31, 1938, and one for the period of time ending June 30, 1940. Appellant offered the reports in their entirety, and especially offered pages 8 and 9 of the first and pages 9 and 10 of the latter.

It is alleged the period of insolvency of the Underwriters is from December 31, 1939, through October 25, 1941. There were offered by appellee and received in evidence three balance sheets, prepared by Mr. Floyd Herring, being: one as of December 31, 1939, one as of December 31, 1940, and one as of October 25, 1941. This witness testified his examination of the Underwriters began December 31, 1937, "but the records on file were in such condition that I could not find a starting point for the basis of this suit before December 31, 1939." The testimony of this witness and the balance sheets prepared by him showed the liabilities of the Underwriters to be greater than the assets. Pages 8 and 9 of the examiner's report for the period ending December 31, 1939, were in the form of balance sheets showing the financial condition of said Underwriters for said period, and pages 9 and 10 of the record for the period ending June 30, 1940, were in like form. These are in conflict with both the testimony and the balance sheets of the witness Herring. The insolvency of the Underwriters is a material issue in the case for because of this alleged condition appellee seeks to obtain a levy of assessment against appellants.

Art. 4690b, Vernon's Annotated Civil Statutes, provides for the appointment of a chief examiner and assistant by the Chairman of the Board of Insurance Commissioners; Art. 4690c requires the examiner

and assistant to take an oath and give bond before entering upon the duties of appointment; Art. 4690 makes provision for the examination of insurance companies by the Chairman of the Board of Insurance Commissioners in person or by one or more examiners.

Art. 4695 provides: "Every instrument executed by the Commissioner of Insurance of this or any other State, in which the substantial provisions of the laws of this State relating to insurance have been or shall be enacted pursuant to authority conferred by law, and authenticated by his seal of office, shall be received as evidence; and copies of papers and records in his office certified by him, and so authenticated, shall be received as evidence with the same effect as the originals."

Art. 3722 provides: "The Secretary of State * * * Commissioner of Insurance * * * shall furnish any person applying for the same with a copy of any paper, document or record in their offices, and with certificates under seal certifying to any fact contained in the papers, documents or records of their offices; and the same shall be received in evidence in all cases in which the originals would be evidence."

Art. 4682a delegates the duties originally imposed on the Commissioner of Insurance to the "Board of Insurance Commissioners."

Art. 4682 imposes the duty upon the Commissioner of seeing that all laws respecting insurance and insurance companies are faithfully executed, and Sec. 2 of said Article provides he shall file and preserve in his office all papers required by law to be deposited with him, and to furnish any party interested certified copies thereof upon payment of the prescribed fee.

The Board of Insurance Commissioners is charged by law with the duty, the power and authority to see that the laws of the state regulating insurance are kept; one such duty is to make or cause to be made the examination provided for in Art. 4690. Having caused these reports to be made pursuant to authority conferred on him by law, such copies were admissible in evidence under the very terms of Art. 4695 and, also, Art. 3722. Bauer v. Austin, Tex.Civ.App., 4 S.W.2d 201, Error Dismissed.

These sheets were admissible in evidence, but for the reasons herein stated their exclusion could not have harmed appellant. Points 12, 13 14 and 15 are overruled.

By his point 16 appellant complains of the action of the trial court in refusing to admit in evidence certified copies of two annual statements filed by the attorney in fact for the Underwriters for the years 1939 and 1940. Art. 5030 imposes the duty on the attorney in fact to make an annual report to the Insurance Commissioner for each calendar year, each report shall be filed on or before March 1 and shall be for the previous calendar year ending December 31, and shall show the financial condition of affairs at the office where such contracts are issued is in accordance with the standard of solvency provided for; and shall furnish such additional information as may be required. These were reports filed pursuant to the requirements of this Article. The above Article concludes by making provision, "The business affairs and assets of said * * * exchanges, as shown at the office of the attorney thereof, shall be subject to examination of such Commissioner."

It is clear the statute provides for a performance of a duty by the attorney in fact; that is the preparation and filing with the Commissioner of such statement, not in the capacity of a public official, but in the discharge of a duty imposed upon him because of his position as such attorney in fact. The statute plainly makes provision for examination of the business affairs and assets of said exchanges as shown at the office of the attorney. This provision considered in connection with Art. 4690 is merely one of the steps taken by the Board in determining the financial condition of the exchange, and is not a public record in the sense of being admissible in evidence in this case. The trial court did not err in excluding these statements.

Appellant's point 17 complains that the trial court erred in overruling

his plea of the two-year statute of limitation. Vernon's Ann.Civ.St. art. 5526. This plea must be overruled. Limitation begins to run against liability for assessment of the nature here sued for from the date of the order of the court levying such assessment. McLean v. Morrow, Tex.Civ.App., 137 S.W.2d 113 Dismissed J.C., and authorities there cited. The action here is to obtain the levy of assessment and no order of the court had been issued at the time the plea was interposed.

By point 18 appellant presents this cause of action cannot be maintained as a class action. We overrule this contention. A similar suit to this was held proper in Southern Ornamental Iron Works v. Morrow, Tex.Civ.App., 101 S.W.2d 336, Error Refused; and in Richardson v. Kelly, 144 Tex. 497, 191 S.W.2d 857, certiorari denied by U. S. Supreme Court 329 U.S. 798, 67 S.Ct. 487, 91 L.Ed. 383, the Supreme Court expressly held the method here employed to be proper for assessing subscribers at a reciprocal insurance exchange.

The judgment of the trial court is affirmed.