Henry L. SEALE et al., Appellants,

v.

MAJOR OIL COMPANY, Appellee.

No. 4225.

Court of Civil Appeals of Texas.

Eastland.

April 26, 1968.

Rehearing Denied May 17, 1968.

Jackson C. Burroughs, Dallas, for appellants.

Kelsoe & Stone, Harold B. Stone, Dallas, for appellee.

COLLINGS, Justice.

Major Oil Company brought suit against Henry L. Seale and Henry L. Seale Aviation Supply Co., Inc., seeking to recover damages for the breach of a contract to drill an oil well. The case was tried before the jury and based upon the verdict, judgment was rendered against defendants for damages as prayed. The defendants hereinafter referred to as Seale, or appellant have appealed.

Appellee's pleadings and the record show that Major Oil Company, on May 7, 1962, assigned a 40 acre interest in an oil and gas lease located in the State of Louisiana to appellant, Henry L. Seale, reserving ¼th of ⅞ths of all the oil, gas and other minerals produced under the lease, free of all costs to appellee. The assignment provided that appellant would drill two wells on the lease, one of which had already been partially drilled. Concerning the drilling of the wells, the assignment provided that each well should be drilled with due diligence to a depth sufficient to test the Saratoga and Annona chalk found in the area at a depth of between 3,000 and 4,000 feet; that the second well should be commenced within 45 days after completion of the first. Seale drilled the first well to the required depth and it appeared to be a dry hole. Appellant then refused to drill the second well. He alleged in his pleadings and contended at the trial and here contends that the first well was drilled to the prescribed depth but was not "completed"; that he was unable to complete the well because it was a dry hole; that a "completed" well, as contemplated by the contract and in the oil industry means the bringing in, finishing and completing of a commercial producing oil well and that since it was impossible to "complete" the first well by making a commercial producing oil or gas well appellant had no obligation under the contract to drill the second well.

The court found that the undisputed evidence established that the assignment agreement between the parties was entered into by them and was valid in all respects, except as to appellants' defenses which were to be decided by the jury. The court further found, and it is undisputed, that appellants did fail to drill the second well.

The contract or assignment in question contains the following provisions:

"As the primary consideration for this assignment, the Assignee agrees to drill two wells, (one of which has been partially drilled), on the Southwest Quarter of Southeast Quarter, Section 27, Township 6 North, Range 13 West at the locations and in the manner hereinafter specified.

a. One well shall be drilled on each 20 acre tract of the assigned 40 acres according to the spacing regulations of the State of Louisiana.

b. Each well shall be drilled with due diligence to a depth sufficient to test the Saratoga and Annona chalks found in this area between approximately 3000 to 3400 feet.

c. The Saratoga and Annona chalk sections shall each be properly tested in each well by means of Drill Stem Tests or by setting casing and testing thru same.

d. The first well has been commenced and Assignee shall complete the same with due diligence and without delay; and the second well shall be commenced within 45 days after the completion of the first well.

As a further consideration, Major Oil Company reserves unto itself free of all costs, ¼ or ⅞ of all oil, gas and other minerals that may be produced under this assigned lease. Said reserved interest being what is commonly called an Over-riding Royalty."

■ We overrule appellants' point in which it is contended in effect that since under the uncontradicted evidence the first well was never completed as a producing oil or gas well that appellant was under no obligation under the contract to drill a second well, and that the court, therefore, erred in overruling his motions for an instructed verdict and for judgment non obstante veredicto. By the terms of the contract appellant agreed to drill two wells according to the spacing regulations of the State of Louisiana. Each well was required to be drilled to a depth sufficient to test the Saratoga and Annona chalk formations and it was provided that each of such formations should be properly tested in each well. It was further provided that the second well "shall be commenced within 45 days after the completion of the first well." Appellants' contention is that the "completion" of the first well as referred to in the contract meant the completion of that well as a producing oil or gas well and that since the first well was not a producing oil or gas well that he had no obligation to drill the second well. In our opinion this was not the meaning of the language of the contract. The stated primary consideration of the assignment was appellant's agreement "to drill two wells." It was provided that "one well shall be drilled on each 20 acre tract—." Considering the provisions of the contract as a whole it is clear that the parties intended that

two wells should be drilled and that there was no contingency or condition to appellants' obligation to drill the second well. The provision that "the second well shall be commenced within 45 days after the completion of the first well" simply identifies the time at which appellant was required to begin the drilling of the second well. The reference to "the completion of the first well" does not as contended by appellant mean the completion of such well as an oil or gas producer but has a broader meaning and refers to completion of the required work on the well whether it became a producer or not.

■ The judgment against the defendant because of his failure to drill the second well was in the sum of $19,823.25, which was the amount that the uncontroverted evidence showed to be the cost of drilling a second well. Appellants contend that the court erred in entering judgment for appellee for such amount or for any other amount because appellant asserts that it is the established law in this State that the measure of damages for the breach of a lessee's covenant to drill an oil well is the value of the lessor's royalty and not the agreed cost of drilling the well. This point is not well taken. The contract in question was made and performable in the State of Louisiana. Under the laws of that state the measure of damages for the failure to drill a well as contracted is the cost of drilling the well. Fite v. Miller, 196 La. 876, 200 So. 285 (1941); Jones v. Whittington, La.App., 171 So.2d 764; 247 La. 624, 172 So.2d 703. The trial court granted appellee's motion to take judicial notice of the law of the State of Louisiana and properly granted judgment for appellee for damages for breach of the contract according to the law of that state. Rule 184a Texas Rules of Civil Procedure; Pacific Mutual Life Insurance Company v. Hale, 267 S.W. 282 (Tex.Civ.App., 1924, writ ref.); Jones v. National Cotton Oil Company, 31 Tex.

Civ.App. 420, 72 S.W. 248 (1903, writ ref.); Washington National Insurance Company v. Shaw, 180 S.W.2d 1003 (Tex.Civ.App., 1944, writ dism.); Corrosion Rectifying Co. v. Freeport Sulphur Co., D.C., 197 F.Supp. 291.

Appellant further alleged that after it appeared that it was impossible to complete the first well as a producing oil well the parties entered into a written agreement providing that if appellant would further test such well by squeezing off the Annona chalk formation and then further perforate the Saratoga chalk and, if possible, complete that section, that if appellant by such tests was still unable to make a completed oil or gas well of the first well, he would then be under no obligation to drill the second well. This pleading was not denied by appellee under oath. Over appellant's objections appellee was permitted to introduce evidence, and the court submitted to the jury the question of whether appellee agreed in writing that Seale would not be required to drill the second well if the first well was dry after such additional tests. The jury answered the question in the negative.

Appellee introduced testimony to the effect that Seale, when he refused to drill the second well and the matter of making additional tests on the first well was discussed, requested a modification of the original assignment contract; that he requested appellee to reduce its override interest from ¼th to ⅛th. Seale was called by appellee as an adverse witness, and on cross examination testified that appellee's representative Barbre had signed the questioned new written agreement relieving him of the obligation to drill the second well if the additional tests on the first were unfavorable. Over objection appellee was permitted to introduce evidence to the effect that appellee did not execute such new written agreement; that appellee sent Seale a letter enclosing an original and copy of an offer to reduce its override if appellant would make further tests on the first well and then proceed to perform the contract by drilling the second well, and that "all other provisions" of the original assignment "should remain unchanged;" that the cover letter stated if Seale wished to accept and comply with the offer he should sign and return the original, and if not, to return both unsigned copies to appellee. The evidence was to the effect that Seale returned the original of the offer to appellee, signed as requested, but that the following sentence had been inserted by him in both the original and the copy:

"In the event the above number one well is dry after re-work, we have the right to return said lease to you without further obligation to you."

Appellee was permitted over appellant's objection to testify that he received the original of the offer of modification, as altered by Seale, and immediately sent a registered letter to Seale reciting the fact of the alteration and stating that such alteration was entirely unacceptable and would not be agreed to; that appellee was holding Seale to the terms of the assignment and expected him "to proceed with the same at once." It was as noted, found by the jury that Seale and appellee did not agree in writing that Seale would not have to drill the second well if the first well was dry after the additional tests were made.

In appellants' first point it is contended that the court erred in overruling Seale's motion for judgment non obstante veredicto. Appellant in such motion and in his point asserts that he alleged the execution by himself and appellee of the above mentioned new instrument in writing; that by the terms of such instrument appellant, by making certain additional tests on the first well, could be relieved of any liability to drill the second well, if the first well was still dry after such tests; that such written instrument, if the terms were complied with, was a complete bar to appellee's right

to recovery under the original contract; that appellee failed to deny under oath the execution of such new writing, as required by rules 93 and 94 T.R.C.P; that the undisputed evidence shows that appellant complied with the terms of and made the tests provided for in such new written agreement and that after such tests the well was still dry; that by reason of the above facts and circumstances the court erred in overruling appellants' motion for judgment non obstante veredicto. The facts recited in connection with and in support of the point are shown by the record.

■ In the absence of sworn pleadings by appellee denying execution of the new written agreement alleged by Seale as a defense to appellee's suit on the original contract the court was not authorized to admit over objection evidence in support of appellee's contention that such writing was not executed, or to submit that question to the jury, or to enter judgment for appellee based upon the jury answer thereto in appellee's favor. Rules 93 and 94, supra. In order to put in issue the execution of an instrument in writing upon which a "pleading" is founded it is held that one who seeks to deny the execution thereof must make such denial under oath. Howell v. First Federal Savings and Loan Ass'n, 383 S.W.2d 484 (Tex.Civ.App., 1964, Ref. n. r. e.); Howell v. Knox, 211 S.W.2d 324 (Tex.Civ.App., 1948, Ref. n. r. e.); Prudential Petroleum Corporation v. Rauscher, Pierce & Co., Inc., 281 S.W.2d 457 (Tex. Civ.App., 1955, Ref. n. r. e.).

■ It is provided by Rule 93, supra, that in the absence of a sworn plea of denial such a written instrument shall be received in evidence as fully proved. Thus, it is held that a defendant who does not deny the execution of an alleged written contract is held to have admitted it. Flowers v. Michulka, 389 S.W.2d 367 (Tex.Civ.App., 1965); Collins Construction Co. of Tex. v. Taylor, 372 S.W.2d 548 (Tex.Civ.App., 1963, Ref. n. r. e.); Manning v. Barnard, 277 S.W.2d 160 (Tex.Civ.App., 1955, Ref. n. r. e.); Michelin Tire Co., Inc. v. Ganter, 61 S.W.2d 525 (Tex.Civ.App., 1933, no writ history).

The rule is held to be the same when, as here, a defendant pleads a written instrument which he charges was executed by the plaintiff and upon which he relies as a defense. Thomason v. Berry, 276 S.W. 185 (Tex.Com.App., 1925); Oliver Farm Equipment Sales Co. v. French, 91 S.W.2d 887 (Tex.Civ.App., 1936, writ dism.); Wilson v. Martinez, 74 S.W.2d 308 (Tex.Civ.App., 1934, no writ history).

■ The judgment should, therefore, be reversed. In considering whether judgment should be rendered for appellant or the cause remanded we have concluded that the ends of justice require a remand. The improperly admitted evidence, if admissible would amply support the finding complained of and the judgment based thereon. If the court had properly sustained appellants' objections to such evidence appellee could have amended his pleadings if he so desired and then such evidence would have been admissible. This is not a case in which there was a refusal to amend after a trial court ruled that the pleadings would not support the admission of evidence or the submission of an issue to the jury. Under these circumstances we have concluded that the cause should be remanded for another trial rather than rendering judgment for appellant. Brann v. Arbuthnot, 274 S.W. 660 (Tex.Civ.App., 1925, no writ history); Southland Greyhound Lines, Inc. v. Frausto, 69 S.W.2d 497 (Tex.Civ.App., 1934, writ dism.).

For the reasons stated the judgment is reversed and the cause is remanded.