**AFFILIATED CAPITAL CORPORA-TION and Billy B. Goldberg, Appellants,**

v.

**Robert J. MUSEMECHE and Patricia M. Musemeche, Appellees.**

No. A14–90–0163–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 24, 1991.

Rehearing Denied Feb. 21, 1991.

Herbert N. Lackshin, Houston, for appellants.

Robert W. Musemeche, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and JUNELL and MURPHY, JJ.

## OPINION

JUNELL, Justice.

Appellees, Robert J. Musemeche and Patricia M. Musemeche, accepted a $500,000 promissory note from Affiliated Capital Corporation in exchange for their interest in a Houston office building. When Affiliated defaulted in 1986, appellees sued on the note, contending that Affiliated's president, Billy B. Goldberg, defrauded them by causing Affiliated to be merged into a "shell" corporation in 1983, and consequently, Affiliated's assets were denuded and it could not pay on the note. In addition, appellees complained that Goldberg represented to them that cash flow problems prevented Affiliated from paying its February, 1986 installment on the note, although in the same month, Affiliated received some $9.7 million in settlement of a cable television lawsuit. A jury found against appellees' theory that Affiliated was "a mere tool or business conduit" of another Goldberg corporation, but answered other special issues in appellees' favor, resulting in a judgment of $455,196 plus $45,519 in attorneys' fees plus interest against Goldberg and Affiliated, jointly and severally, and $500,000 in punitive damages

against Goldberg, individually. In twenty-eight points of error, appellants contend that (1) appellees failed to establish they are the owners and holders of the note, (2) appellees' pleadings failed to put appellants on notice of any alleged fraudulent activities at any time other than the 1983 merger, (3) there is no evidence or insufficient evidence to support findings of individual liability or malice against Goldberg, (4) the trial court erred in setting the amount of judgment, (5) proposed explanatory instructions should have been given to the jury, and (6) improper evidence was admitted. We reverse and remand.

Appellees invested their life savings into a joint venture agreement with Affiliated Capital Corporation and a third partner, Louis Marichal, to design and develop an office building in Houston. At completion in late 1982, the building was appraised and valued at $10 million. Appellees sold their twenty-five percent equity interest in the project to Affiliated for $500,000, accepting a promissory note, dated February 25, 1983, to be paid in five annual installments of $100,000 each, plus semi-annual interest payments.

After the parties agreed to the sale but before the transaction actually occurred, Affiliated was merged into a Delaware corporation called ACC Acquisition, which became a completely owned subsidiary of Goldberg, Inc., a company which Goldberg owned and controlled. Mr. Musemeche testified that he closed the agreement with Affiliated with knowledge of the merger and the fact that all of Affiliated's assets and liabilities were transferred into ACC Acquisition, which later changed its name to Affiliated Capital Corporation.

Affiliated paid installments on the note in February of 1984 and 1985. However, Goldberg informed appellees that Affiliated would "not be in a position to make" its February 25, 1986 payment, and he invited appellees to discuss "a restructuring of the note provisions." No further installments were paid. Appellees brought suit against Affiliated to recover the unpaid principal and interest balance owed on the note.

In their first six points of error, appellants contend that appellees failed to establish they are the owners and holders of the promissory note in question. Without objection, appellees introduced a copy of the note, which shows on its face it was issued to their order. Mr. Musemeche testified this was a "true and correct copy" of the note, that he had been paid part of the money owed, and that he was "still trying to collect." Similarly, in *Zarges v. Bevan,* 652 S.W.2d 368, 369 (Tex.1983), the plaintiffs established they were the sole owners and holders of an absent promissory note by offering a photocopy of the note and affirming it to be a true and correct copy of the note which they lawfully held. Here, as in *Texas Airfinance Corp. v. Lesikar,* 777 S.W.2d 559, 562 (Tex.App.—Houston [14th Dist.] 1989, no writ), appellants presented no proof that appellees are not the owners and holders of the note, nor was there any evidence suggesting that the note had ever been pledged, assigned, transferred, or conveyed. We hold, therefore, absent controverting evidence, the proof was sufficient to show that appellees are the owners and holders of the note. We overrule points of error one through six.

Although Goldberg did not sign the note, appellees also asserted several theories of recovery against Goldberg, individually. In their Third Amended Original Petition, on which they went to trial, appellees alleged the following in support of their claims of constructive fraud and sham to perpetrate a fraud:

"8. Plaintiffs will show that after Goldberg agreed to purchase the Partnership interest of Robert J. Musemeche, Goldberg conspired with Michael Horsley, Leslie Robertson and Maury Rubin to defraud Plaintiffs of their interest in the Partnership and Note. Between February of 1983, when Goldberg agreed to purchase the Partnership interest of Robert J. Musemeche, and September 21, 1983, when the actual transaction occurred, Goldberg caused Affiliated, a Texas corporation, to be merged into a shell corporation called ACC Acquisition Corporation, a Delaware corporation. After the merger, on July 29, 1983, ACC Acquisition Corporation changed its name to Affiliated Capital Corporation; and Affiliated Capital Corporation, Texas, was no longer an active corporation. ACC Acquisition Corporation became a completely-owned subsidiary of Goldberg, Inc., a corporation owned and controlled by Goldberg. Plaintiffs will show that Goldberg's conduct in facilitating the merger of Affiliated into a shell corporation was done for the purpose of organizing a corporation to be operated as a mere tool or business conduit of another corporation with the intent to perpetrate a fraud on Plaintiffs.

9. Affiliated was a viable corporation prior to the sham merger, having assets in excess of Thirty Million Dollars. However, Goldberg's conduct denuded Affiliated's assets, and as a result, Affiliated was unable to meet its obligations on the Note."

Appellants contend the trial court erred in admitting exhibits and testimony showing that in February, 1986, the same month that Goldberg informed appellees that Affiliated was unable to pay on the note, the company received a payment of $9.7 million in settlement of a cable television lawsuit. The documents also reveal that in February, 1986, Affiliated paid Goldberg approximately $2.5 million to satisfy a shareholder's loan he had made to Affiliated, and Affiliated loaned $2,158,000 to Goldberg, Inc. Appellants objected that this information should not have been admitted because it involved events outside the plaintiffs' pleadings and therefore did not accord them "fair and adequate notice of the facts" upon which the claim was based. *Klein v. Sporting Goods, Inc.,* 772 S.W.2d 173, 177 (Tex.App.—Houston [14th Dist.] 1989, writ denied), citing *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982). Explaining to the trial court that the 1986 transactions had only recently been discovered, appellees offered to amend their pleadings to allege that Goldberg tortiously interfered with their contract with Affiliated. Inexplicably, the trial court allowed evidence of the 1986 transactions but denied

appellees leave to amend their pleadings, then submitted jury questions regarding Goldberg's alleged tortious interference.

We agree that appellees' pleadings were insufficiently broad to encompass fraudulent conduct outside the 1983 merger. However, it is equally clear that, based on the 1986 transactions, the jury concluded that Goldberg's impropriety lay not in causing the 1983 merger but in misrepresenting the company's financial status so that a legitimate debt could be avoided; with malice, the jury concluded, Goldberg committed constructive fraud upon appellees and tortiously interfered with their contract.

Texas law requires a judgment to conform to the pleadings and the verdict. TEX.R.CIV.P. 301. A party may not obtain a judgment based upon a theory not pled. *Wilson v. McCracken*, 713 S.W.2d 394, 395 (Tex.App.—Houston [14th Dist.] 1986, no writ); *Crozier v. Horne Children Maintenance and Educ. Trust*, 597 S.W.2d 418, 421 (Tex.App.—San Antonio 1980, writ ref'd n.r.e.) (citations omitted). Although appellees assert that appellants waived the lack of pleading by not specially excepting pursuant to TEX.R.CIV.P. 91, their petition was not subject to exception because it stated with particularity a set of facts relating to the merger which appellees claimed was fraudulent. Unsupported by appellees' pleadings, the judgment of the trial court must be reversed. *Oil Field Haulers Assoc. v. R.R. Comm'n*, 381 S.W.2d 183, 191 (Tex.1964). However, in cases in which it would be unjust to render judgment, a remand has often been ordered, for example, to amend pleadings. *Karl and Kelly Co. v. McLerran*, 646 S.W.2d 174, 175 (Tex.1983) (citations omitted). Here, as in *Seale v. Major Oil Co.*, 428 S.W.2d 867, 871 (Tex.Civ.App.—Eastland 1968, no writ), there is ample evidence which, if believed, would support the jury's findings and the judgment based thereon. Under these circumstances, we conclude that the ends of justice require a remand.

Our disposition of the case on this ground makes it unnecessary to consider appellants' remaining contentions.

The judgment is reversed and the cause remanded.